## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

AUTORIDAD DE CARRETERAS Y
TRANSPORTACION,

     **Plaintiff,**

        **v.**                **Civil No.** 15-1924 (FAB)

TRANSCORE ATLANTIC, INC.,

     **Defendant.**

### OPINION AND ORDER[1]

BESOSA, District Judge.

     Before the Court is a motion to compel discovery and a request for sanctions filed by defendant TransCore Atlantic, Inc. ("TransCore"). (Docket No. 65.)  Plaintiff Puerto Rico Highway and Transportation Authority ("PRHTA") opposed the motion, (Docket No. 67).  TransCore later filed an amended informative motion, (Docket No. 90), and PRHTA responded with a motion for a protective order, (Docket No. 97).  TransCore opposed this motion, (Docket No. 99), PRHTA replied, (Docket No. 104), and TransCore filed a sur-reply, (Docket No. 107).

---

[1] Natalia Vilá-Palacios, a second-year student at the University of Puerto Rico School of Law, assisted in the preparation of this Opinion and Order.

Also before the Court are four motions from both parties requesting an extension of the discovery period. (Docket Nos. 112-115.)

For the reasons that follow, the Court **GRANTS in part and DENIES in part** TransCore's motion to compel, **DENIES** PRHTA's motion for a protective order, and **GRANTS** an extension of the discovery period.

## I.   TRANSCORE'S MOTION TO COMPEL

### A.   Background

On December 1, 2015, TransCore sent its first discovery request to PRHTA, which included a request for production of documents (Docket No. 65-3) and an interrogatory (Docket No. 65-4.) According to the Joint Proposed Discovery Plan, PRHTA had 30 days to answer these discovery requests. (Docket No. 46 at p. 2.) On December 31, 2015 - the deadline to answer TransCore's first discovery request - PRHTA asked for a 30-day extension. (Docket No. 52-4.) TransCore opposed the 30-day term but proposed a seven-day extension. (Docket No. 52-5 at p. 3.) Because the parties were unable to reach an agreement (Docket No. 65 at p. 5), TransCore informed the Court of PRHTA's non-compliance with the discovery requests, (Docket No. 52.) The Court ordered PRHTA to answer TransCore's discovery requests by January 25, 2016. (Docket No. 55.)

Unable to meet the Court's deadline, PRHTA requested an additional extension to answer TransCore's discovery requests. (Docket No. 57.)  The Court granted an extension until February 11, 2016.  (Docket No. 61.)  PRHTA did not comply with the Court's order and requested another extension until February 16, 2016, (Docket No. 62), which the Court granted, (Docket No. 63).  On February 17, 2016 - one day after the court-ordered deadline - PRHTA answered TransCore's interrogatories.  (Docket No. 65-6.) The next day, PRHTA sent TransCore some of the documents requested (Docket No. 65-7), but objected to the production of 49 other documents, (Docket No. 65-8).  TransCore responded and explained both why the answers to the interrogatories were inadequate and why the objections to the production of documents were inappropriate. (Docket No. 65-9.)  In order to resolve this issue, the parties held a meet-and-confer teleconference during which PRHTA agreed to supplement or amend several of its responses by March 1, 2016. (Docket No. 65-10.)  On March 3, 2016 - two days after the agreed upon date - PRHTA provided some additional documents and information to TransCore, but mainly reiterated its previous objections to TransCore's requests.  (Docket No. 65-11.)  On April 1, 2016, TransCore moved for an order to compel and requested

the imposition of sanctions.   (Docket No. 65.)   PRHTA opposed.

(Docket No. 67.)

## B.  Discussion

TransCore argues that PRHTA has "failed to comply with its

discovery obligations" by providing answers to discovery requests

that "are littered with unresponsive assertions and improper

refusals to produce documents."   (Docket No. 65 at pp. 1-2.)

TransCore asks the Court to order PRHTA to comply with its

discovery requests and seeks the imposition of sanctions against

PRHTA due to its pattern of non-compliance with the Court's orders.

Id. at p. 27.

PRHTA objects to TransCore's requests and counters that,

because the terms of the contract between the parties are clear,

there is simply no need for discovery of extrinsic evidence. Rather

PRHTA maintains that the only evidence required for adjudication of

this dispute is the contract itself.   (Docket No. 67 at p. 3.)

Thus, it argues that it should not be required to produce the

requested documents or answer interrogatories unless and until the

Court rules that the language of the contract is ambiguous.   Id. at

p. 4.

### 1.   Standard

Federal Rule of Civil Procedure 26 ("Rule 26") states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" and that information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). As long at it is acting within the scope of Rule 26, a party may conduct discovery by, among other things, serving another party with interrogatories, Fed. R. Civ. P. 33 ("Rule 33"), or by making requests for the production of documents, Fed. R. Civ. P. 34 ("Rule 34").

When a party resists the production of evidence, it "bears the burden of establishing lack of relevancy or undue burden." Sánchez-Medina v. UNICCO Service, Co., 265 F.R.D. 24, 27 (D.P.R. 2009) (Arenas, J.) (citing St. Paul Reinsurance Co. v. Commercial Fin. Corp., 198 F.R.D. 508, 511-12 (N.D. Iowa 2000)). The objecting party "must show specifically how each interrogatory or request for production is not relevant or how each question is overly broad, burdensome or oppressive." Id. (quotation marks omitted). See also Fed. R. Civ. P. 33(b)(4) (providing that "the grounds for objecting to an interrogatory must be **stated with specificity**.") (emphasis provided); Fed. R. Civ. P. 34(b)(2)(B)

(providing that objections to a request for document production must "**state with specificity** the grounds" for the objection, "including the reasons.") (emphasis provided).  Thus, generalized objections to an opponent's discovery requests are insufficient.  See, e.g., Mancia v. Mayflower Textile Servs. Co., 253 F.R.D. 354, 358 (D. Md. 2008) ("Boilerplate objections that a request for discovery is overbroad and unduly burdensome . . . are improper unless based on particularized facts.") (citations and quotation marks omitted); Walker v. Lakewood Condo. Owners Ass.n, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all.")

If "a party fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents . . . as requested under Rule 34", the opposing party may move for an order compelling discovery.  Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv).

**2.  PRHTA's General Objection to TransCore's Discovery Requests**

Before tackling PRHTA's specific objections to TransCore's discovery requests, the Court quickly addresses its more general objection that the only evidence relevant in this dispute  is the contract between the parties.  (Docket No. 67 at pp. 3-4.)  In essence, PRHTA asserts that extrinsic evidence will

only be admissible if the Court decides that the terms of the contract are ambiguous.  Id. at p. 4.  Because the Court has yet to rule on this particular issue, PRHTA argues, TransCore's discovery requests are premature and, therefore, currently irrelevant.  As a general matter, however, "parties are entitled to a broad discovery."  Santiago v. Fenton, 891 F.2d 373, 379 (1st Cir. 1989).  In line with this principle of broad discovery, Rule 26 provides that "information . . . need not to be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).  Therefore, the fact that the extrinsic evidence sought by TransCore may not be admissible at trial is not an appropriate ground on which PRHTA may object to the discovery of that evidence.

PRHTA's general objection to all discovery requests is also inappropriate in light of the Court's original Case Management Order issued on September 30, 2015.  (Docket No. 36.)  Through this Order, both parties were notified of the scope of discovery and of their various discovery obligations.  See Id. at pp. 5-9.  Contrary to its argument, PRHTA cannot now flout these obligations merely because it believes - in its sole discretion - that the contract between the parties is unambiguous on its face.

Civil No. 15-1924 (FAB)                                              8

For these reasons, PRHTA's general objection to TransCore's discovery requests is properly disregarded by the Court.

### 3.   PRHTA's Specific Objections to TransCore's "First Set of Interrogatories"

PRHTA objects to 16 out of the 24 questions included by TransCore in its "First Set of Interrogatories." [sic] <u>See</u> Docket No. 65-6.  PRHTA contends that the challenged questions either: (1) relate to privileged information, (2) are overly broad, or (3) lack relevance.  (Docket No. 65-6.)  TransCore counters that PRHTA's objections are inadequate, boilerplate statements that do not exhibit the level of specificity required by Rule 33.  (Docket No. 65 at p. 7.)  TransCore also claims that by merely directing it to other discovery materials or allegations found in the complaint, PRHTA has failed to provide satisfactory answers to certain questions in the interrogatory to which it did not object.  (Docket 65 at p. 18.)

### i.   The Challenged Questions in the Interrogatory

The challenged questions read:

(3) In addition to those already identified elsewhere in the capital proceedings, list, identify and describe all documents, tangible things and /or real and demonstrative evidence in your possession, or in possession of any of HTA's agents, representatives,

contractors and/or consultants which are related in any
way to this case.

(4) Indicate whether any documents related or
referring to the contentions, claims, allegations, or
denials in this case have been discarded and/or
destroyed. For all documents so identified, specify: its
title; who prepared it; to whom it was addressed and the
dates and reasons why the documents were discarded,
destroyed, or are otherwise unavailable.

(6) In addition to those already identified
elsewhere in the captioned proceedings, identify and
provide the full name, address and telephone number, of
every person that may have knowledge or discoverable
information relevant to the allegations in the Complaint
and the Answer to the Counterclaim and/or any related
defenses or issues regardless of whether HTA intends to
use him/her as witnesses during this case.  Include the
following:

(a) An individualized and detailed summary of
any information or knowledge they may have regarding this
case and/or any related defenses or issues and their
participation, if any, in the events of this case;

(b) Evidence and nature of their employment or
other relationship with HTA;

(c) Identify and describe any and all
documents related to the information in their
possessions; and

(d) Identify any and all statements given by
each one of the persons identified in your answer.

(8) State with detail the basis for every one of
HTA's allegations and defenses as stated in the Complaint
and Answer to the Counterclaim.  Identify every person
that may have knowledge of the facts related to said
defenses and allegations or related issues including all
the officials, agents, employees, officers, atorneys,
accountants, consultants, contractors, experts, other

representatives, or any other person acting on HTA's behalf that may have knowledge of HTA's position regarding the equipment dispute. Include an individualized and detailed summary of any information they may have regarding such defense or allegation. Identify all documents that support said allegations and/or defenses.

(9)  With respect to every allegation contained in the Counterclaim denied in HTA's Answer to the Counterclaim, provide the following information in an independent and separate manner:

(a)  The basis or reason for the denial;

(b)  Identify every person whom HTA understands might have knowledge of the facts supporting such denial, regardless of whether HTA intends to use such persons as witnesses during this case;

(c)  Provide an individualized and detailed summary of any information or knowledge they may have regarding such denial;

(d)  Identify all documents related to such denial, or any related matter; and

(e)  Provide a detailed summary of all facts supporting such denial.

(11) Identify any documents, communications written or oral, memoranda, notes, or computer records, or e-mails, concerning any meetings in which you or HTA, HTA's agents, officials, employees, consultants or contractors participated concerning the events and circumstances related to the allegations of the Complaint, the Answer to Complaint and/or the allegations in the Answer to the Counterclaim, where these materials are now located, the date they were prepared, and identify every person who prepared or has knowledge of these materials.

(12) State the basis for your allegation in paragraph 7 of the Complaint. In answering this interrogatory, please:

(a) Explain and express the facts and identify the documentary evidence upon which you based the above allegation;

(b) Identify with particularity any and all witnesses you intend to use to support the above allegation;

(c) In relation to each of such witnesses, please give a summary of the testimony the witness will advance in support of the above allegation.

(14) State the basis upon which you allege in paragraph 12 of the Complaint that TransCore's "interpretation of the Master Services Agreement is legally erroneous. The PRHTA and the new provider of these services negotiated their contract, based on the text and what was agreed upon by PRHTA and TransCore in the Master Service Agreement, therefore they did not contemplate having to acquire this equipment and materials, believing that the same are PRHTA's property." In answering this interrogatory, please:

(a) Explain and express the facts and identify the documentary evidence upon which you based the above allegation;

(b) Identify with particularity any and all witnesses you may or may not intend to use to support the above allegation;

(c) In relation to each of such witnesses, please give a summary of the testimony the witness will advance in support of the above allegation.

(15) State the basis upon which you allege in paragraph 23 of the Complaint that "Since the PRHTA is the owner of all equipment, materials and infrastructure forming part of the definition of Service Property,

TransCore has no right to remove or take this property with it, once its contract with the PRHTA ends on June 30, 2015." In answering this interrogatory, please:

(a) Explain and express the facts and identify the documentary evidence upon which you based the above allegation;

(b) Identify with particularity any and all witnesses you may or may not intend to use to support the above allegation;

(c) In relation to each of such witnesses, please give a summary of the testimony the witness will advance in support of the above allegation.

(16) Describe in detail and identify every person involved and every document, invoice, inventory and/or written, taped or electronic communication which form the basis for your allegation in paragraph 39 of the Complaint that "the PRHTA has made available to the above-captioned parties all available mechanisms in order to address and resolve this dispute extra-judicially. Among the mechanisms that have been utilized are correspondence via e-mail between the parties and meetings to discuss arguments supporting each party's position."

(17) Identify every person who performed any act or had any responsibility for the performance of any act with respect to the 2002 Request for Proposal New Toll Collection System Acquisition & Installation, NTCS Maintenance and Customer Service Center Management and Operations Contract No. AC-800197.

(18) Identify every person involved and every document, invoice, and/or written, taped or electronic communication regarding M/CSC Monthly Payment Statement and/or invoices submitted by TransCore to HTA pursuant to Article 5.4 Special Provisions-NTCS Maintenance and Customer Service Center Management & Operations Contract No. AC-8000197.

(19) Identify every person involved and every document, invoice, inventory and/or written, taped or electronic communication regarding Equipment Inventory pursuant to Article 6.5, Special Provisions- Acquisition & Installation Contract No. AC-8000197.

(20) Identify every person involved and every document, invoice, inventory and/or written, taped or electronic communication regarding Request for Payment or invoice pursuant to Article 13.4 Special Provisions- Acquisition & Installation Contract No. AC-8000197.

(21) Identify every person involved and every, document, invoice, inventory and/or written, taped or electronic communication regarding Echopass, Atento and/or third party contracts for operations of the Customer Service Center.

(24) Identify every person and communication (oral, written, or electronic) that performed any act or had any responsibility for the performance of any act with respect to all of the invoices TransCore provided to HTA. (Docket No. 65-4.)

### ii. Objections Based on Privilege

When a party objects to discovery requests on the basis of privilege, "the party must, '(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'" Rivera v. Kmart Corp., 190 F.R.D. 298, 300 (D.P.R. 2000) (Pieras, J.) (citing Fed. R. Civ. P. 26(b)(5)(A)).

Here, PRHTA argues that it cannot answer interrogatories 8, 9, 12, 14 and 15 because "matching testimony and documents with allegations prior to trial is privileged information or otherwise not subject to discovery." (Docket No. 65-6 at pp. 6-8, 10.)  In other words, PRHTA claims that it cannot be obligated to disclose the requested evidence (testimonial and documentary) because that evidence may in fact be used to support its own allegations.  The Court agrees with TransCore that this objection is entirely frivolous and has no basis in law.  Indeed, it defies the very purpose of discovery, which is to allow litigants access to "any nonprivileged matter that is **relevant to any party's claim or defense** . . . ."  Fed. R. Civ. P. 26(b)(1) (emphasis provided). Because PRHTA fails to advance any viable argument to support its claim of privilege, the Court overrules its objection and **GRANTS** TransCore's motion to compel proper responses to interrogatories 8, 9, 12, 14 and 15.

### iii. Objections Based on Overbreadth

The "mere statement by a party that the interrogatory [or request for production] was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection." Sánchez-Medina 265 F.R.D. at 27 (citations omitted).  "On the contrary, the party resisting discovery must

show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive." Id.

Here, PRHTA claims that it cannot answer questions 3, 4, 6, 9, and 11 because their inclusion of the phrases "related or referring to" or "related in any way" render them overly broad and, thus, impossible to answer. (Docket No. 65-6 at pp. 2-8.)  The Court again agrees with TransCore that these objections are without legal merit.  Because PRHTA did not provide any additional information to establish a colorable claim of overbreadth, the Court overrules its objection and **GRANTS** TransCore's request to compel proper responses to questions 3, 4, 6, 9 and 11.

### iv.  Objections Based on Relevance

PRHTA refuses to answer questions 21 and 24 because they allegedly seek information that is irrelevant to the disagreement between the parties.  (Docket No. 65-6.)  More specifically, PRHTA argues that information regarding third-party operations of the disputed Customer Service Center equipment is not pertinent to interpreting the contract between the parties.

The Court reiterates that the scope of discovery pursuant to Rule 26 includes any nonprivileged matter that is

"relevant to **any party's** claim or defense."   Fed. R. Civ. P.
26(b)(1).   Here, TransCore asserts that information regarding the
use of the CSC equipment by third parties is important because it
helps to establish PRHTA's understanding that TransCore owned that
equipment.   (Docket No. 65 at p. 19.)   Because the information it
seeks is relevant to its own claims, TransCore's discovery requests
are appropriate pursuant to the federal rules.   Accordingly, the
Court **GRANTS** TransCore's request to compel a proper response to
questions 21 and 24.

### v.   Unsatisfactory Responses to Answered Questions

"Answering interrogatories simply by directing the
proponent to rummage through other discovery materials falls short
of the obligations imposed by Rule 33."   <u>Mulero-Abreu v. Puerto
Rico Police Dept.</u>, 675 F.3d 88, 93 (1st Cir. 2012).   Additionally,
an "incorporation by reference of the allegations of a pleading is
not a responsive and sufficient answer to an interrogatory."
<u>Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.</u>, 61
F.R.D. 115, 120 (N.D. Ga 1972) (citations omitted).

Here, PRHTA responds to interrogatories 12, 14, 15,
17, 18, 19, 20, and 24 simply by referring TransCore either to
other discovery materials or to allegations contained in the
complaint.   (Docket No. 65-6 at pp. 8-13.)   In light of the rules

discussed immediately above, these responses are wholly inadequate.

Accordingly, the Court **GRANTS** TransCore's request to compel proper

responses to interrogatories 12, 14, 15, 17, 18, 19, 20, and 24.

**4.    PRHTA's Specific Objections to TransCore's "First Request for Production of Documents"**

TransCore claims that PRHTA has failed to provide

adequate responses to 13 of the 30 items appearing in TransCore's

"First Request for Production of Documents." See Docket No. 65 at

p. 27.

**i.    The Challenged Requests for Production**

The challenged requests for production read as

follows:

(1) A copy of, or a description by category and
location of, all documents, data compilations, and
tangible things in Your possession, custody or control
which refer to, relate to, or regard the allegations,
defenses, and/or affirmative defenses in the pleadings
that were not produced earlier as part of your initial
disclosures.

(6) All documents, including demonstrative
evidence, you intend to use or introduce in evidence at
trial that may not have been previously disclosed.

(9) Copies of every written, taped, and/or
electronic communication between HTA, any person or
entity, and Gila, LLC its subsidiaries or affiliates,
regarding:

(a)  The allegations in the Complaint and the
Answer to the Counterclaim;

(b) HTA's 2014 Request for Proposal, procurement process, negotiations and modifications;

(c) The CSC equipment and furniture ownership dispute;

(d) The transfer of the operation to Gila, LLC; and/or

(e) Succession phase.

(10) Copies of every, written, taped and/or electronic communication between You or any person or entity, and Gila, LLC, its subsidiaries or affiliates, including but not limited to any document that contains any notes of any conversations to support your allegation in paragraph 12 of the Complaint that "The PRHTA and the new provider of these services negotiated their contract, based on the text and what was agreed upon by PRHTA and TransCore in the Master Service Agreement, therefore they did not contemplate having to acquire this equipment and materials, believing that the same are PRHTA's property.

(12) Copies of every written, taped and/or electronic communication including but not limited to any notes of any conversation within HTA, any public corporation or government agency regarding:

(a) The allegations in the Complaint and the Answer to the Counterclaim;

(b) HTA's 2002 Request for Proposal, procurement process, negotiations and modifications;

(c) HTA's 2007 Request for Proposal, procurement process, negotiations and modifications;

(d) HTA's 2014 Request for Proposal, procurement process, negotiations and modifications;

(e) The CSC equipment and furniture ownership dispute;

(f)  The transfer of the operation to Gila, LLC; and/or

(g)  Succession phase.

(13) Copies of each and every document that contains any notes of any conversations within HTA regarding:

(a)  The allegations in the Complaint and the Answer to the Counterclaim;

(b)  HTA's 2002 Request for Proposal, procurement process, negotiations and modifications;

(c)  HTA's 2007 Request for Proposal, procurement process, negotiations and modifications;

(d)  HTA's 2014 Request for Proposal, procurement process, negotiations and modifications;

(e)  The CSC equipment and furniture ownership dispute;

(f)  The transfer of the operation to Gila, LLC; and/or

(g)  Succession phase.

(14) Copies of each and every written, taped and or/electronic communication between HTA, any person or entity, and HTA's former our current consultants but not limited to Bill Brownsberger and/or E-Trans, Darell Fleming regarding:

(a)  The allegations in the Complaint and the Answer to the Counterclaim;

(b)  HTA's 2014 Request for Proposal, procurement process, negotiations and modifications;

(c)  The CSC equipment and furniture ownership dispute;

      (d)   Change Orders;

      (e)   Amendments;

      (f)   Equipment inventory;

      (g)   TransCore invoices;

      (h)   Customer   Service   Operations   Periodic Activity Performance Report;

      (i)   Atento's Call Center;

      (j)   Echopass;

      (k)   The CSC equipment and furniture ownership dispute;

      (l)   Succession phase; and/or

      (m)   The   transfer   of   the   operation   to   Gila, LLC.

(15) Copies of each and every document that contains any notes of any conversations between HTA, any person or entity,   and   HTA's   former   or   current   consultants, including but not limited to, Bill Brownsberger and/or Darrell Fleming regarding:

      (a)   The allegations in the Complaint and the Answer to the Counterclaim;

      (b)   HTA's   2014   Request   for   Proposal, procurement process, negotiations and modifications;

      (c)   The CSC equipment and furniture ownership dispute;

      (d)   Change Orders;

      (e)   Amendments;

      (f)   Equipment inventory;

(g)  TransCore invoices;

(h)  Customer  Service  Operations  Periodic Activity Performance Report;

(i)  Atento's Call Center;

(j)  Echopass;

(k)  The CSC equipment and furniture ownership dispute;

(l)  Succession phase; and/or

(m)  The  transfer  of  the  operation  to  Gila, LLC.

(16) Copies of each and every written, taped and/or electronic communication between TransCore, any person or entity, and HTA's employees, officers and/or officials, including  but  not  limited  to  Felipe  Luyanda-Andino, Carlos Contreras, CarmenVillar Prados, Ariel Pérez and/or Luis Alberto Sánchez regarding:

(a)  The allegations in the Complaint and the Answer to the Counterclaim;

(b)  Change orders;

(c)  Amendments;

(d)  Equipment inventory;

(e)  TransCore invoices;

(f)  Customer  Service  Operations  Periodic Activity Performance Report;

(g)  Atento's Call Center; and/or

(h)  Echopass;

(i)  HTA's 2014 Request for Proposal;

(j)  The CSC equipment and furniture ownership dispute;

(k)  Succession phase; and/or

(l)  The transfer of the operation to Gila, LLC.

(17) Copies of each and every document that contains any notes of any conversations between TransCore, any person or entity, and HTA's employees, officers and/or officials, including but not limited to Felipe Luyanda-Andino, Carlos Contreras, Carmen Villar Prados, Ariel Pérez and/or Luis Alberto Sánchez regarding:

(a)  The allegations in the Complaint and the Answer to the Counterclaim;

(b)  Change orders;

(c)  Amendments;

(d)  Equipment inventory;

(e)  TransCore invoices;

(f)  Customer Service Operations Periodic Activity Performance Report;

(g)  Atento's Call Center; and/or

(h)  Echopass;

(i)  HTA's 2014 Request for Proposal;

(j)  The CSC equipment and furniture ownership dispute;

(k)  Succession phase; and/or

(l)  The transfer of the operation to Gila, LLC.

(18) Copies of every written, taped and/or electronic communication between HTA, TransCore, any person or entity, and Yasmín Santiago-Zayas, Esq. including but not limited to, documents that contain any notes of any conversations regarding:

(a) The allegations in the Complaint and the Answer to the Counterclaim;

(b) HTA's 2014 Request for Proposal;

(c) Amendments;

(d) Equipment inventory;

(e) Customer Service Operations Periodic Activity Performance Report;

(f) The CSC equipment and furniture ownership dispute;

(g) Succession phase; and/or

(h) The transfer of the operation to Gila, LLC.

(19) Copies of every written, taped and/or electronic communication between HTA, TransCore, any person or entity, and Jorge Alberto Ruiz Alvarez, including but not limited to, documents that contain any notes of any conversations regarding:

(a) The allegations in the Complaint and the Answers to the Counterclaim;

(b) HTA's 2014 Request for Proposal;

(c) TransCore invoices;

(d) The CSC equipment and furniture ownership dispute; and/or

(e)  The transfer of the operation to Gila, LLC.

(29) Copies of every, document, invoice, inventory and/or written, taped or electronic communication regarding TransCore's Annual Report and inventory of the service property pursuant to Article 3.3 of the Special Provisions -NTCS Maintenance and Customer Service Center and Operations.

(Docket No. 65-3.)

### ii. Objections Based on the Pending Identification of Documents

"[A] response to a request for production of documents which merely promises to produce the requested documents at some unidentified time in the future, without offering a specific time, place and manner is not a complete answer as required by Rule 34(b)."  Jayne H. Lee, Inc. v. Flagstaff Industries Corp., 173 F.R.D. 651, 656 (D. Md. 1997).  "Furthermore, the promise to continue to search for records and supplement responses in the future, is a completely inadequate response to a long standing discovery request."  Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 246 (M.D.N.C. 2010) (citations and quotation marks omitted).

Here, PRHTA responded to items 9, 10, 12-19 and 29 with a statement that the identification of the requested documents was "still pending."  (Docket No. 65-5.)  This does not constitute

Civil No. 15-1924 (FAB)                                                25

a proper justification for a delay in the production of the
requested documents.  The Court has already granted PRHTA two
extensions to comply with TransCore's discovery requests. (Docket
Nos. 63 and 61.)  Because PRHTA has enjoyed a generous amount of
time in which to answer these requests for production properly, its
excuse that these documents have yet to be identified is
unwarranted.  Accordingly, the Court **GRANTS** TransCore's motion to
compel the production of documents requested in items 9, 10, 12-19
and 29 of its "First Request for Production of Documents."

    **iii.  Responses that Merely Refer TransCore to Other
       Discovery Materials**

      In its initial responses to TransCore's "First
Request for Production of Documents," PRHTA answered items 1 and 6
by directing TransCore to "all documents already produced by
PRHTA."  (Docket 65-5 at pp. 1-2.)  Additionally, in its
complementary responses, it answered items 9, 10, 12-19 and 29 by
referring TransCore "to the production and disclosures made to date
by PRHTA."  (Docket No. 65-7.)  As discussed above, the mere
referral to other discovery materials does not constitute a proper
answer to a discovery request.  See Mulero-Abreu, 675 F.3d at 93.
Accordingly, the Court **GRANTS** TransCore's motion to compel the

Civil No. 15-1924 (FAB)                                                           26

production of documents requested in items 1, 6, 9, 10, 12-19 and
29 of its "First Request for Production of Documents.

   **5.   PRHTA's Additional Objections to TransCore's Requests for
        Production**

         Following a meet-and-confer teleconference between the
parties, PRHTA agreed to supplement or amend its discovery
responses (Docket No. 65-10), and submitted a revised list of
documents that it would disclose.  (Docket No. 65-11.)  It also
included in that communication a list of documents that it refused
to produce on various grounds (the "Revised List of Objections"),
including:  (1) attorney/client privilege, (2) attorney work
product, and (3) relevance.  (Docket No. 65-11.)  TransCore argues
that while PRTHA did indeed provide some additional documents and
information in this complementary production, it mostly reiterated
its prior objections to TransCore's requests.  (Docket No. 65 at
pp. 7-8.)

         **i.   Objections Based on Attorney-Client Privilege**

              As discussed above, when a party objects to a
discovery request on the basis of privilege, it must do more than
just assert that claim.  It must also "describe the nature of the
documents, communications, or things not produced or disclosed in
a manner that, without revealing information itself privileged or

protected, will enable other parties to assess the applicability of the privilege." Fed.R.Civ.P. 26(b)(5).  In general, the attorney-client privilege attaches to documents where (1) legal advice is sought from (2) a professional legal advisor in his capacity as such, (3) the communications relating to that purpose (4) were made in confidence (5) by the client, and thus (6) are at his instance permanently protected (7) from disclosure by himself or the legal advisor (8) except if the protection has been waived.  Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002).

Here, PRHTA objects to the discovery of items 5, 12, and 27 in its Revised List of Objections on grounds of attorney-client privilege.  (Docket No. 65-11 at p. 3.)  PRHTA, however, makes only a minimal effort to describe the nature of those documents.  The Court is therefore unable to determine whether the attorney-client privilege is properly invoked with respect to these items.  Nevertheless, because those documents may in fact be subject to the attorney privilege, the Court will allow PRHTA the opportunity to come forward with additional information demonstrating its applicability here.  Accordingly, it **DENIES** TransCore's motion to compel items 5, 12, and 27 and **ORDERS** PRHTA to provide - **no later than December 16, 2016** - the information necessary to facilitate a proper determination by the Court.  No

extensions will be allowed.  Failure to provide the information by
that date will constitute a waiver of the attorney-client
privilege.

### ii.  Objections Based on Work-Product Privilege

The attorney work-product privilege, codified in
Fed. R. Civ. P. R. 26(b)(3), shields from disclosure materials
prepared by attorneys "in anticipation of litigation."  See Maine
v. United States Dep't of Interior, 298 F.3d 60, 66 (1st Cir. 2002)
"Materials assembled in the ordinary course of business, or
pursuant to public requirements unrelated to litigation, or for
nonlitigation purposes," on the other hand, are not protected by
the work-product doctrine.  United States v. Textron Inc. &
Subsidiaries, 577 F.3d 21, 30 (1st Cir. 2009) (quoting Fed. R. Civ.
P. 26 advisory committee's note (1970)).

Here, PRHTA contends that it should not be required
to disclose items 3, 4, 7, 14-16 and 25 in its Revised List of
Objections because they constitute attorney work-product.  (Docket
No. 65-11 at p. 4-5.)   PRHTA, however, does not provide any
information to establish that the documents requested were in fact
created specifically in anticipation of litigation.  The Court
therefore requires more detailed descriptions of the documents in
order to draw a conclusion as to the applicability of the work-

product doctrine.  Accordingly, it **DENIES** TransCore's motion to compel items 3, 4, 7, 14-16 and 25, and **ORDERS** PRHTA to provide - **no later than December 16, 2016** - the information necessary to facilitate a proper determination by the Court.  No extensions will be allowed.  Failure to provide the information by that date will constitute a waiver of the attorney work-product privilege.

### iii. Objections Based on Relevance

As discussed above, Rule 34 requires that objections to requests for production be made with specificity.  This means that the objecting party has a duty to substantiate its claim that a certain discovery request lacks relevance.  See Sánchez-Medina 265 F.R.D. at 27.

Here, PRHTA refuses to produce items 22-24, 34, 39-41 and 49 in its Revised List of Objections on relevance grounds. (Docket No. 65-11 at p. 5-6.)  Once again, however, PRHTA merely states its objection without providing any information or explanation to support its rationale.  Because PRHTA utterly fails to substantiate its conclusion that the requested documents are irrelevant to the dispute between the parties, the Court **GRANTS** TransCore's request to compel the production of documents listed in items 22-24, 34, 39-41 and 49.

## II.  PRHTA'S MOTION FOR A PROTECTIVE ORDER

### A.  Background

On April 5, 2016, TransCore served a notice of its intent, pursuant to Federal Rule of Civil Procedure 30(b)(6) ("Rule 30(b)(6)"), to take an oral deposition of PRHTA. (Docket No. 90-1 at p. 2.)  The notice informed PRHTA of its duty to designate individuals who could represent its organization for that deposition, and requested that PRHTA identify those individuals seven days prior to the date of the deposition.  Id. at p. 2-3. On May 12, 2016, TransCore served an amended version of the deposition notice to account for a scheduling change.  Id. at p. 13.  On May 24, 2016, PRHTA responded that, in light of certain "concerns," it wished to "confer" with TransCore to discuss the "topics and time periods" of the requested deposition.  (Docket No. 90-2 at p. 3.)  On May 31, 2016, the parties held a meet-and-confer to discuss, among other things, the Rule 30(b)(6) deposition.  During this conference, PRHTA voiced concerns about the time period covered by the deposition, and about the existence of appropriate witnesses.  (Docket No. 90-3 at p. 5-6.) Specifically, PRHTA objected to the presentation of any witness that did not have personal knowledge of the issues identified in the deposition notice.  Id. at p. 6.

On June 2, 2016, PRHTA provided - in response to an email from TransCore memorializing the May 31, 2016 conference - a short list of objections to the Rule 30(b)(6) deposition. (Docket No. 90-3 at pp. 4-5.)  TransCore responded to this list by asserting that: (1) PRHTA's objections, having come almost two months after PRHTA first learned of the deposition topics, were untimely and therefore waived, (2) PRHTA's "remarks" were "general and boilerplate" and therefore were insufficient to satisfy PRHTA's legal obligation to state its objections with specificity, and (3) TransCore was committed to exercising its right to take a Rule 30(b)(6) deposition of a PRHTA designee.  Id. at p. 3.  During a June 6, 2016 teleconference, the parties agreed to schedule that deposition for June 30, 2016, (Docket No. 90-4 at p. 3-4), and on June 13, 2016, TransCore served a second amended deposition notice to reflect that agreed upon date, (Docket No. 90-1 at p. 23).

On June 15, 2016, PRHTA confirmed that the Rule 30(b)(6) deposition would take place on June 30, 2016 and informed TransCore that it had identified potential witnesses for the deposition. (Docket No. 90-4 at pp. 2-3.)  PRHTA also reiterated its objections previously made on June 2, 2016 and asked TransCore to meet again in order to reach an agreement regarding the discoverability of the noticed deposition topics.  Id.

Over the next two days, the parties met at TransCore's counsel's office to conduct other depositions in connection with this litigation. (Docket No. 90 at p. 4.)  TransCore claims that during these two days PRHTA never approached TransCore to discuss any issues related to the upcoming Rule 30(b)(6) deposition.  Id.

On June 24, 2016, TransCore asked PRHTA to provide a list of the designated individuals, and their areas of knowledge, who would represent PRHTA at the Rule 30(b)(6) deposition.  (Docket No. 90-5 at p. 4-5.)  PRHTA apparently did not respond to this inquiry.  On June 28, 2016, TransCore reiterated its request and asked PRHTA to provide the information about the designated witnesses.  Id. at p. 4.  On June 29, 2016 - one day before the agreed upon deposition date - PRHTA notified TransCore that it would not attend the Rule 30(b)(6) deposition in light of TransCore's "fail[ure] to even consider a single objection to an evidently deficient notice."  Id. at p. 2-3.  It also informed TransCore of its intention to "seek judicial protection" from participation in the deposition.  Id. at p. 3.

On July 1, 2016, TransCore filed an informative motion notifying the Court of PRHTA's non-compliance with the noticed deposition.  (Docket No. 90.)  PRHTA responded by filing a motion for a protective order on July 7, 2016.  (Docket No. 97.)

**B.  Discussion**

PRHTA seeks a protective order "relieving [it] from (1) producing witnesses for the 30(b)(6) deposition notified by Transcore, and (2) from producing any further copy of any document to Transcore." (Docket No. 97 at p. 16.)  It argues that a protective order is justified because TransCore's deposition notice "calls for clearly impertinent discovery and fails to . . . 'describe with reasonable particularity the matters for examination,'" as required by the Federal Rules.  See Id. at p. 1 (quoting Fed. R. Civ. P. 30(b)(6)).

TransCore opposes the motion for a protective order.  (Docket No. 99.)  It argues, among other things, that its noticed Rule 30(b)(6) deposition was appropriate in scope and that PRHTA's objections to its chosen discovery method were insufficiently specific.  See Id. at p. 17, 27.  TransCore also asserts that PRHTA's failure to appear at the Rule 30(b)(6) deposition was "a serious breach of its discovery obligations" and that it "should be severely sanctioned" for that inappropriate, defiant conduct.  Id. at p. 8, 11.

   **1.   Protective Order Standard**

Rule 26(c) of the Federal Rules of Civil Procedure grants the Court the discretion to issue protective orders that limit the

extent and manner of discovery, in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c)(1). The Court, however, may only issue such an order "for good cause." Id. Thus, the party seeking a protective order bears the burden of establishing good cause and a specific need for protection. See Pub. Citizen v. Liggett Grp., Inc., 858 F.2d 775, 779 (1st Cir. 1988) (citations omitted). "A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." Anderson v. Cyovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986); see also Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3rd Cir. 1994) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.") (citations and  quotation marks omitted).

     "Because of its nature, the deposition process provides a means to obtain more complete information and is, therefore, favored." Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989). Thus, "for ordinary discovery, protective orders totally prohibiting a deposition are rarely granted absent extraordinary circumstances." BB & T Corp. v. United States, 233 F.R.D. 447, 448 (M.D.N.C. 2006); see also Prozina Shipping Co. v. Thirty-Four Automobiles, 179 F.R.D. 41, 48 (D. Mass. 1998)

("Prohibiting the taking of depositions is an extraordinary measure . . . [and] [t]he moving party has a heavy burden of showing extraordinary circumstances based on specific facts that would justify such an order.") (internal quotations omitted); Bucher v. Richardson Hospital Authority, 160 F.R.D. 88, 92 (N.D.Tex. 1994) ("Protective orders prohibiting depositions are rarely granted," and then only if movant shows a "particular and compelling need" for such an order); Motsinger v. Flynt, 119 F.R.D. 373, 378 (M.D.N.C. 1988) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition.")

### 2.   A Protective Order Completely Shielding PRHTA from TransCore's Rule 30(b)(6) Deposition is Unwarranted

Rule 30(b)(6) allows a party to notice the deposition of an organization.  In so doing, the party need only "describe with reasonable particularity the matters for examination."  Fed. R. Civ. P. 30(b)(6).  The named organization is then required to designate one or more representatives to testify as to the areas specified.  Id.  While the representatives need not have personal knowledge of those areas, the organization has an obligation to "prepare them so that they may give complete, knowledgeable and

binding answers on behalf of the [organization]." Marker, 125 F.R.D. at 126.

Here, TransCore has made a proper demand for a Rule 30(b)(6) deposition. In essence, TransCore is looking for information regarding "the extent of the mutual obligations between the parties, and their respective performance, as to [the disputed contract]." See Docket No. 99 at p. 12. It specifically seeks details from PRHTA regarding the portions of the contract that PRHTA believes definitively establish its ownership of the CSC equipment. Id. Because it allegedly was unable to obtain that information from PRHTA's specified fact witnesses, see id. at pp. 12-17, TransCore concluded that a Rule 30(b)(6) deposition would be a useful tool to gather the desired evidence. It therefore served a notice of its intent to utilize that discovery method as early as April 5, 2016. In that notice - which remained substantively the same across several iterations - TransCore designates 43 specific topics for examination. See Docket No. 90-1 at pp. 6-11. Although these topics are admittedly overbroad at times, the overwhelming majority of them are arguably relevant to TransCore's claims and are sufficiently clear to allow PRHTA to determine which individuals are best suited to testify on its behalf. Accordingly, the Court finds that, in drafting its Rule

30(b)(6) deposition notice, TransCore effectively satisfied its singular obligation to identify the topics of examination with "reasonable particularity."  See Mitsui & Co. (U.S.A.) v. P.R. Water Res. Auth., 93 F.R.D. 62, 66 (D.P.R. 1981) (Perez-Gimenez, J.) (finding that Rule 30(b)(6) notices comply with the "reasonable particularity" requirement when they "are sufficient to inform [the noticed organization] of the matters which will be inquired into at the depositions so that [it] can determine the identity and number of persons whose presence will be necessary to provide an adequate response to any of [the opponent's] potential questions.")

More important than the propriety of TransCore's demand for a Rule 30(b)(6) deposition, however, is PRHTA's failure to demonstrate the requisite "good cause" for exempting it from that discovery.  In its June 2, 2016 correspondence, PRHTA outlined a short list of concerns that it harbored about the noticed deposition and the scope of its designated topics.  These "remarks" tersely stated that certain topics were "irrelevant," that some "[had] not been specified with reasonable particularity," and that still others were "unreasonably burdensome."  See Docket No. 90-3 at p. 5.  The Court agrees with TransCore that these "boilerplate" objections are woefully insufficient, see Walker 186 F.R.D. at 587, and do not evince the type of "extraordinary circumstances"

required to issue a protective order insulating PRHTA from participation in a Rule 30 deposition.[2]

Because TransCore's noticed deposition was appropriate, and because PRHTA has failed to demonstrate the level of "good cause" necessary to grant a protective order shielding it from that discovery, PRHTA's motion requesting that specific relief is

---

[2] PRHTA also objects to the Rule 30(b)(6) deposition on the grounds that certain noticed topics "may be tended through stipulations or written requests." (Docket No. 90-3 at p. 5.) This objection, however, is without merit and can be dismissed out of hand. It is not for PRHTA to decide which tools TransCore should or should not utilize in conducting its own discovery. See e.g., BB & T Corp. v. U.S., 233 F.R.D. 447, 448 (M.D.N.C. 2006) ("The Federal Rules of Civil Procedure favor unhampered discovery and, normally, the choice of discovery methods should be left to the parties.") Moreover, courts are generally unwilling to interfere with a party's decision to conduct a Rule 30(b)(6) deposition, even when other, more efficient, discovery options might be available. See, e.g., U.S. E.E.O.C. v. Caesars Entm't, Inc., 237 F.R.D. 428, 433-35 (D. Nev. 2006) (noting that the use of Rule 30(b)(6) depositions is "not novel," and that - absent a strong showing of burdensomeness - it is inappropriate to deny a party its choice of discovery methods by, for example, requiring it to use interrogatories in lieu of a Rule 30(b)(6) deposition.); Dongguk Univ. v. Yale Univ., 270 F.R.D. 70, 74 (D. Conn. 2010) (remarking that a party should not be prevented from conducting a Rule 30(b)(6) deposition "just because the topics proposed are similar to those contained in documents provided or interrogatory questions answered."); Marker, 125 F.R.D. at 126 (noting that the Federal Rules of Civil Procedure do not permit a party served with a Rule 30(b)(6) deposition notice "to elect to supply the answers in a written response to an interrogatory.") Thus, the fact that alternative methods of discovery could theoretically be employed by TransCore to gather the information it seeks does not, by itself, establish "good cause" to protect PRHTA from participation in the Rule 30(b)(6) deposition.

**DENIED.**   The Court **ORDERS** PRHTA to comply with its discovery obligations by producing the appropriate witnesses who - after being adequately prepared by the organization - are capable of giving meaningful, informative and complete responses to the topics listed in TransCore's deposition notice.

### 3.   A Blanket Protective Order Shielding PRHTA from any Further Requests for Production is Also Inappropriate

PRHTA also seeks a protective order "forbidding the production of any further document by PRHTA to Transcore." (Docket No. 97 at p. 16.)  PRHTA appears, in other words, to be asking the Court to grant it a blanket release from its discovery obligations arising from TransCore's requests for production.  In support of this request, PRHTA reiterates its general, overarching objection that, because there is "no issue of contractual ambiguity" in the litigation between the parties, there is simply no need for discovery of "anything but duly executed contractual text," evidence that is already available to both parties. <u>Id.</u> at p. 5. This argument, however, is unavailing and does not establish the type of "good cause" needed to grant PRHTA's requested relief. First of all, the Court has yet to determine whether the disputed contract between the parties is indeed unambiguous.  It is therefore premature for PRHTA to affirm confidently that any and

all information produced through discovery will be inadmissible here. Second, and as discussed above, Rule 26 does not require that relevant information be admissible to be discoverable. Thus, although the extrinsic evidence sought by TransCore may ultimately be unnecessary and inadmissible in the resolution of this case, that fact does not prevent TransCore from obtaining that information now through the discovery process.

Because PRHTA has a continuing obligation to cooperate in discovery that falls within the boundaries established by Rule 26, its motion for a blanket protective order shielding it from all further requests for production is **DENIED**.

### 4. PRHTA Should be Sanctioned for Deliberately Abandoning the Scheduled 30(b)(6) Deposition

Having determined that PRHTA is not entitled to a protective order pursuant to Rule 26(c), the Court must now decide whether PRHTA should be sanctioned for its failure to appear at the Rule 30(b)(6) deposition that had been scheduled for June 30, 2016. The Court holds that it should.

Federal Rule of Civil Procedure 37(d) ("Rule 37(d)") provides that a court has the power to order sanctions when "a party . . . or a person designated under Rule 30(b)(6) . . . fails, after being served with proper notice, to appear for that person's

deposition." Fed. R. Civ. P. 37(d)(1)(A)(i). Pursuant to this rule, a court may award a variety of sanctions but "must" require the noncompliant party, its attorney, or both "to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). Furthermore, "[a] failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2). Thus, where a party objects to attending a properly noticed Rule 30(b)(6) deposition, it must seek judicial protection from participation in advance of the date set for the discovery. See Mitsui & Co., Inc., 93 F.R.D. at 67.

Here, there is no doubt that PRHTA's conduct falls within the purview of Rule 37(d). As early as April 5, 2016, PRHTA had notice of TransCore's intent to conduct a Rule 30(b)(6) deposition. (Docket No. 90-1 at p. 11.) During a June 6, 2016 teleconference, it agreed that June 30, 2016 would be an acceptable date for that deposition. (Docket No. 90-4 at p. 3-4.) On June 15, 2016 it not only confirmed that date but also informed TransCore that it had identified potential witnesses for the deposition. Despite this

early notice and confirmatory correspondence with TransCore, PRHTA
simply and suddenly decided not to appear at the scheduled
deposition.  Although PRHTA emphasized that its non-appearance was
grounded in certain objections to the discoverability of the
noticed topics, it did not bother to seek a protective order on the
basis of those objections until July 7, 2016 - a full week after
the deposition date had passed.  In light of that - unnecessary -
delay in seeking judicial protection, PRHTA's stated objections
cannot, pursuant to Rule 37(d)(2), justify its actions here.

Because PRHTA's uncooperative conduct triggers the
proscriptions of Rule 37, sanctions are appropriately imposed.
Accordingly, the Court **ORDERS** PRHTA to pay all reasonable expenses,
including attorneys fees, incurred by TransCore in connection with
the failed June 30, 2016 deposition.  PRHTA is warned that, should
it repeat its recalcitrant behavior at a future Rule 30(b)(6)
deposition, the sanctions imposed against it by the Court will be
much more severe in nature.

### III.  MOTIONS FOR MODIFICATION OF DISCOVERY SCHEDULE

Federal Rule of Civil Procedure 16(b) states that "[a]
schedule may be modified only for good cause and with the judge's
consent."  Fed. R. Civ. P. 16(b)(4).  Here, both parties have filed
for extensions of the discovery period in order to comply with

discovery requests that are still pending.  (Docket Nos. 112-115.)
In light of this mutual interest in lengthening the discovery
period - and taking into consideration the new discovery
obligations generated by this opinion - the Court finds that there
is good cause to modify the discovery schedule.  The Court
therefore **GRANTS** the parties' requests and **EXTENDS** the discovery
period until **February 28, 2017**.  No additional extensions will be
allowed.

## IV.  CONCLUSION

For the reasons discussed above, the Court **GRANTS in part and
DENIES in part** TransCore's motion to compel discovery, (Docket
No. 65), and **DENIES** PRHTA's motion for a protective order, (Docket
No. 97).  The Court **ORDERS** PRHTA to:

1.   Properly respond to TransCore's Interrogatories 3, 4, 6,
8, 9, 11, 12, 14, 15, 17-21 and 24.

2.   Provide proper responses to items 1, 6, 9, 10, 12-19 and
29 contained in TransCore's "First Request for Production of
Documents."

3.   Disclose documents 22-24, 34, 39-41 and 49 from its
"Revised List of Objections."

4.   Provide - **no later than December 16, 2016** - additional
information so that the Court can make a proper determination as to

whether the attorney-client privilege applies to items 5, 12, and 27 from PRHTA's "Revised List of Objections."

5.    Provide - **no later than December 16, 2016** - additional information so that the Court can make a proper determination as to whether the work-product privilege applies to items 3, 4, 7, 14-16 and 25 from PRHTA's "Revised List of Objections."

6.    Produce - and prepare, as necessary - representatives to testify on behalf of PRHTA in a future Rule 30(b)(6) deposition.

7.    Pay TransCore the costs, fees and expenses it incurred as a result of the failed Rule 30(b)(6) deposition.  TransCore **SHALL** submit a memorandum of these costs **no later than December 16, 2016.**

The Court **ORDERS** PRHTA to comply with this order (except for items 4 and 5, which have their own due date) **by January 31, 2017** or be subject to the sanctions available to the Court pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(i)-(vii), including waiver of any privilege and the striking of its answer and an entry of default against PRHTA.

The Court also **EXTENDS** the discovery period until **February 28, 2017.**  Finally, the parties **SHALL** meet and provide for the Court's consideration a proposed schedule leading up to and including a trial date.  The date to file the proposed pretrial order, the date

Civil No. 15-1924 (FAB)                                                    45

when the pretrial conference is scheduled and the trial date are

set aside.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, December 2, 2016.

                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        UNITED STATES DISTRICT JUDGE