IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

AUTORIDAD DE CARRETERAS Y
TRANSPORTACION,

    **Plaintiff,**

        **v.**

TRANSCORE ATLANTIC, INC.,

    **Defendant.**

**Civil No.** 15-1924 (FAB)

MEMORANDUM AND ORDER[1]

BESOSA, District Judge.

    Before the Court is a motion for judgment on the pleadings[2] filed by plaintiff Puerto Rico Highway and Transportation Authority ("PRHTA").   (Docket No. 66.)   Defendant TransCore Atlantic, Inc. ("TransCore") opposed the motion, (Docket No. 77), PRHTA replied, (Docket No. 83), and TransCore filed a sur-reply, (Docket No. 88.)   For the reasons that follow, the Court **DENIES** PRHTA's motion for judgment on the pleadings, (Docket No. 66).

---

[1] Natalia Vilá-Palacios, a second-year student at the University of Puerto Rico School of Law, assisted in the preparation of this Memorandum and Order.

[2] Although PRHTA titled their motion as a motion to dismiss, the Court considers it as a motion for judgment on the pleadings because PRHTA has answered TransCore's counterclaim.   (Docket No. 23.)   See Monell v. Best Pers. Sys., Inc., 127 F. Supp. 2d 48, 50 (D.P.R. 2000) (Arenas, J.) (holding that a court may treat an untimely filed motion to dismiss – one filed after a responsive pleading – as a motion for judgment on the pleadings).

**BACKGROUND**

## I.  Factual Allegations

Because PRHTA moves for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), the Court accepts as true the following non-conclusory factual allegations stated in TransCore's counterclaim and draws all inferences in its favor, see R.G. Financial Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006):

On January 30, 2003, TransCore and PRHTA signed a contract for the implementation and operation of a new toll collection system ("NTCS").[3]  (Docket No. 1-8 at p. 46.)  As agreed, TransCore would install a NTCS and administer a customer service center ("CSC") for PRHTA.  Id. at pp. 46-47.

As the parties neared the expiration of the contract on June 30, 2015, a contractual dispute emerged between the parties regarding the ownership of the CSC.  (Docket No. 25-8 at pp. 26-27.)

---

[3] The Court considers the numerous portions of the contract between TransCore and PRHTA, see Docket No. 1-8 at p. 47, without converting this motion for judgment on the pleadings into a motion for summary judgment because the contract, including its numerous parts, is adequately referenced in the complaint and is central to PRHTA's claims.  See Comite Fiestas de la Calle San Sebastian, Inc. v. Cruz, 170 F. Supp. 3d 271, 273 n.1 (D.P.R. 2016) (Besosa, J.) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

## II.  Procedural Background

On June 17, 2015 PRHTA brought suit against TransCore. (Docket No. 25-1.)  In its complaint, PRHTA asked the Court to issue a provisional restraining order to prevent TransCore from removing the CSC equipment.  (Docket No. 25-1 at p. 22.) Additionally, PRHTA sought a declaratory judgment that it had ownership of the CSC equipment.  Id.

TransCore answered PRHTA's complaint and filed a counterclaim.  (Docket No. 25-8.)  TransCore argued that both the contract and the parties' behavior demonstrate that TransCore owns the CSC equipment.  Id. at pp. 27-33.  TransCore sought a declaratory judgment stating that the CSC equipment belongs to it. Id. at p. 38.  Additionally, TransCore requested compensation for the damages caused by its inability to use and enjoy property it believed to be its own.  Id. at p. 38.

PRHTA answered TransCore's counterclaim on August 12, 2015, (Docket No. 23), and then filed a motion to dismiss that counterclaim on April 8, 2016, (Docket No. 66).  In its motion to dismiss, treated by this Court as a motion for judgment on the pleadings, PRHTA argues that the terms of the contract clearly provide that the CSC equipment belongs to PRHTA.  Id. at p. 1. PRHTA claims that, because the written text of the contract

disposes of the issue in its favor, TransCore cannot claim ownership of the CSC equipment.  <u>Id.</u>

## MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD

When considering a motion pursuant to Rule 12(c), a "court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom . . . ." <u>Villafañe-Colon v. B Open Enterprises, Inc.</u>, 932 F. Supp. 2d 274, 278 (D.P.R. 2013) (Besosa, J.) (quoting <u>Perez-Acevedo v. Rivero-Cubano</u>, 520 F.3d 26, 29 (1st Cir. 2008)).  "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." <u>Ocasio-Hernandez v. Fortuño-Burset</u>, 640 F.3d 178, 182 (1st Cir. 2006).  "The court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." <u>Cruz v. Puerto Rico</u>, 558 F. Supp. 2d 165, 179 (D.P.R. 2007) (Besosa, J.).

The standard for a motion for judgment on the pleadings is essentially the same as that for deciding a motion to dismiss. <u>Perez-Acevedo</u>, 520 F.3d at 29 (citing <u>Curran v. Cousins</u>, 509 F.3d 36, 43-44 (1st Cir. 2007)).  "Like Rule 12(b)(6), Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's

entitlement to a favorable judgment." <u>Cruz</u>, 558 F. Supp. 2d at 179 (citing <u>Rivera-Gómez v. de Castro</u>, 843 F.2d 631, 635 (1st Cir. 1988)).  There is, however, a modest difference between a motion to dismiss and a motion for judgment on the pleadings.  "A Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." <u>Aponte-Torres v. Univ. of P.R.</u>, 445 F.3d 50, 55 (1st Cir. 2006).

## DISCUSSION

## I.   Interpretation of the Contract

Pursuant to Puerto Rico law,[4] when a court is faced with a contractual dispute it must first determine if the terms of the contract are clear.  <u>See</u> P.R. Laws Ann. tit. 31, § 3471.  "Once a court determines that the terms of the contract are sufficiently clear[,] . . . the court cannot dwell on the 'alleged' intent of the parties at the time they entered into the contract." <u>Fernandez-Fernandez v. Mun. of Bayamon</u>, 942 F. Supp. 89, 94 (D.P.R. 1996) (Cerezo, J.).  "Only if the literal terms of the contract are in doubt will it be necessary . . . to examine or interpret the contract with the help of extrinsic evidence." <u>Hopgood v.</u>

---

[4] The parties agree, (Docket No. 1-8 at p. 77), and case law confirms that "[i]n a diversity jurisdiction case, a federal court must apply the substantive law of the forum where the action is filed." <u>Cruz-Gascot v. HIMA-San Pablo Hosp. Bayamon</u>, 728 F. Supp. 2d 14, 19 n. 5 (D.P.R. 2010) (Besosa, J.).

Civil No. 15-1924 (FAB)                                                6

Merrill Lynch, Pierce, Fenner & Smith, 839 F. Supp. 98, 106 (D.P.R. 1993) (Pieras, J.).[5]

## A.   Clarity of the Contract

"An agreement is clear when it can 'be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation.'" In re Advanced Cellular Sys., Inc., 483 F.3d 7, 12 (1st Cir. 2007) (quoting Catullo v. Metzner, 834 F.2d 1075, 1079 (1st Cir. 1987)). When a contract contains several sections or clauses, they "should be interpreted in relation to one another, giving to those that are doubtful the meaning which may appear from the consideration of all of them together." Yordan v. Burleigh Point, Ltd., 552 F. Supp. 2d 200, 204 (D.P.R. 2007) (Besosa, J.) (quoting P.R. Laws Ann. tit. 31, § 3475); see also P.R. Elec. Power Auth. v. Philipps, 645 F. Supp. 770, 772 (D.P.R. 1986) (Fuste, J.) ("[T]he terms of the contract must be read together and harmonized to arrive at the intention of the parties.").

---

[5] Although PRHTA argues that as a government entity all contracts that bind it must be written, (Docket No. 83 at p. 3); see also Colon Colon v. Mun. Arecibo, 170 P.R. Dec. 718, 726 (2007) (requiring a written contract), the written documents here constitute a contract and are subject to the general two-step contract interpretation analysis. See Alto Corp. v. Mun. de Toa Alta, 183 P.R. Dec. 530, 560 (2011) (clarifying that written government contracts are subject to general contract laws).

Here, PRHTA and TransCore signed a contract that consists of several documents: (1) Master Agreement; (2) Special Provisions; (3) Statement of Work; (4) Functional Specifications; (5) Contractor Plan(s); (6) Contractor Proposal, and (7) Contractor Design Documents.[6] (Docket No. 1-8 at p. 47.) PRHTA claims that these documents *clearly* provide that TransCore has no stake over the CSC equipment. (Docket No. 66 at p. 1). Similarly, TransCore argues that the terms of the contract undoubtedly establish TransCore's ownership of the CSC equipment. (Docket No. 7 at pp. 24-30.)

Neither party challenges PRHTA's ownership of the NTCS. The parties disagree, however, on the ownership of the CSC. PRHTA interprets the contract as establishing that the CSC is a component of the NTCS thus making PRHTA the CSC's owner as well. (Docket No. 66 at p. 9.) Conversely, TransCore contends that the CSC is a separate entity from the NTCS and that the parties never agreed that PRHTA would acquire the CSC. (Docket No. 77 at p. 27.)

There are four main areas that the parties argue differing interpretations of specific contractual provisions.

---

[6] Although PRHTA claims that the hierarchy of the contract documents is relevant to dispose of the issues here, (Docket No. 83 at pp. 7-10), both PRHTA and TransCore assert arguments based on the text of the first priority and second priority documents.

Both parties present compelling arguments that are well supported by the record.

### 1.   Allocation of Taxes on the CSC Equipment

First, Article 5.3 of the Special Provisions provides that "[TransCore] shall be responsible for timely identifying and paying all taxes assessed with respect to any services, materials, equipment, processes or operations under, incidental to, or involved in, the performance of the CSC Services." (Docket No. 1-9 at p. 13.)  TransCore argues that its payment of taxes for the CSC equipment is an indicator of ownership.  (Docket No. 77 at p. 37.)  PRHTA counters that Article 12.9 of the Master Agreement contemplates a compensation for the taxes paid by TransCore.  (Docket No. 1-8 at p. 71 (providing that "[t]he Contract Price includes full compensation to [TransCore] for all such taxes in force as of the Final proposal Submission Date."))  PRHTA, thus, interprets that any payment of taxes for the CSC equipment by TransCore does not allocate ownership, but rather it is simply a business expense assumed by TransCore and included in the overall price that TransCore charged PRHTA for the goods and services provided.  (Docket No. 66 at p. 9.)

### 2.   Definition of Service Property

Next, Appendix I of the NTCS Master Agreement defines TransCore's property as the "[p]ersonal property owned or

leased by [TransCore] that is not part of the Service Property or the NTCS." (Docket No. 1-8 at p. 114.) "Service Property" is then defined as "[t]he fixed facilities and the NTCS including but not limited to plazas, CSCs," and other equipment. Id. at p. 119. PRHTA argues that if TransCore owns what is not part of the service property, and the service property includes the CSC, then these definitions logically suggest that TransCore cannot own the CSC. (Docket No. 66 at pp. 9-10.) TransCore argues, however, that these definitions merely establish the inventories of the NTCS and do not allocate any type of ownership. (Docket No. 77 at pp. 34-35.)

### 3.   Definition of Electronic Toll Collection System

The parties then argue that Article 1.1.1 of the NTCS Master Agreement establishes that the NTCS is "more fully described in the Statement of Work." (Docket No. 1-8 at p. 46.) The Statement of Work provides that the NTCS "shall consist of an electronic toll collection system (ETC) that operates simultaneously with, but independent of, existing toll operations at the Authority's facilities." (Docket No. 77-7 at p. 3.) The ETC is then described in the Functional Specifications with the following ill illustration:



(Docket No. 77-8 at p. 3.)  TransCore argues that if the NTCS consists only of an ETC, then, as it can be appreciated from the diagram, the NTCS does not include the CSC and thus, PRHTA is unable to claim ownership of the CSC.  (Docket No. 77 at pp. 26-27.)  PRHTA counters that the ETC, like the CSC, is just one component of the NTCS and the CSC may be part of the NTCS without being part of the ETC.  (Docket No. 83 at p. 9.)

> **4.   Acquisition of the NTCS v. Operation of the CSC**

Finally, the parties disagree on their interpretation of several provisions of the NTCS Master Agreement read together.  The NTCS Master Agreement reads:

**Article 1.1.1 The NTCS**
[PRHTA] has undertaken the development and installation of a stand-alone electronic toll collection system (the "NTCS"), for certain plazas on the toll highways owned and operated by [PRHTA] and more fully described in the Statement of Work.

**Article 1.1.2 Acquisition of the NTCS**
[PRHTA] wishes to acquire the NTCS from [TransCore] and [TransCore] wishes to develop and provide the NTCS to [PRHTA], upon the terms and conditions of the Contract.

Civil No. 15-1924 (FAB)                                          11

> **Article 1.1.3 NTCS Maintenance and Customer Service Center Management & Operations**
> The Contract also includes the maintenance of the NTCS installed, as well as management and operation of [the] Customer Service Center ("CSC").

(Docket No. 1-8 at pp. 46-47.)   TransCore argues that a reading of this section suggests that the CSC is an independent entity from the NTCS because it establishes the *acquisition* of the NTCS, but it only alludes to the *management* and *operation* of the CSC. (Docket No. 77 at p. 25.)   PRHTA, nevertheless, claims that other contract documents contradict this conclusion.   (Docket No. 66 at p. 10.)   PRHTA cites the Special Provisions, which has the purpose of delineating the development, installation, maintenance and operation of the NTCS.   (Docket No. 1-8 at p. 136.)   This document has a section that includes the CSC.   Id. at p. 146.   PRHTA interprets that if the Special Provisions' scope is for the installation of the NTCS and it includes a section regarding the CSC, it can be concluded that the CSC is a part of the NTCS and thus owned by PRHTA.   (Docket No. 66 at p. 11.)

        Reading the contract as a whole, as required by P.R. Laws Ann. tit. 31, § 3475, the Court is unable to conclude that the language of this contract is clear.   Because the contract can be read in such a way that supports either party's interpretation of the contract, the Court finds that the contract is not clear and unambiguous.

## II.  Extrinsic Evidence Should Go to the Factfinder

"When a contract is ambiguous, extrinsic evidence may be considered to determine the intention of the parties." Yordan, 552 F. Supp. 2d at 204 (citing Innovation Mktg. v. Tuffcare, Inc., 31 F. Supp. 2d 218, 222-223 (D.P.R. 1998) (Dominguez, J.)).  "In order to judge as to the intention of the contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract."  P.R. Laws Ann. tit. 31, § 3472. "Consideration of extrinsic evidence to establish the intent of the contracting parties is an issue for the factfinder unless the extrinsic evidence is 'so one-sided that no reasonable person could decide the contrary.'"  Fiestas, 170 F. Supp. 3d at 9 (quoting Wells Real Estate Inv. Tr. II, Inc. v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 54 (1st Cir. 2010)); Den Norske Bank AS v. First Nat'l Bank of Bos., 75 F.3d 49, 52-53 (1st Cir. 1996)).

Here, TransCore introduces three pieces of extrinsic evidence related to tax payments, to a prior course of dealings between the parties, and to a subsequent contract between PRHTA and a third party.  See Docket No. 77 at pp. 12-13, 31.  First, TransCore contends that if PRHTA actually owned the CSC there would have been no need for a payment of taxes related to the CSC because PRHTA is a tax-exempt entity.  (Docket No. 77 at p. 12.)

Second, TransCore claims that during the course of dealings, TransCore "continuously provided inventories [to PRHTA] of the equipment belonging to [PR]HTA and that the CSC equipment was not included in these." (Docket No. 77 at. p. 13.) TransCore argues that, by accepting these inventory reports without objections, PRHTA indicated that it understood that the CSC equipment belonged to TransCore. Id.

Finally, TransCore indicates that the subsequent course of dealings between PRHTA and Gila, LLC ("Gila") further supports TransCore's ownership of the CSC. (Docket No. 77 at p. 31.) In its contract with Gila, PRHTA requested that Gila provide CSC equipment. Id. TransCore argues that if PRHTA owned the existing CSC, then it would not have asked Gila to provide a new CSC. Id.

The Court finds that, although these pieces of evidence may support TransCore's argument of ownership, they do not exclude any other possible argument that may provide for PRHTA's ownership. In other words, the extrinsic evidence is not "so one-sided that no reasonable person could decide to the contrary." See Fiestas, 170 F. Supp. 3d at 275. Thus, resolution of the ambiguity should go to the jury.

## CONCLUSION

The contract between PRHTA and TransCore is ambiguous and the extrinsic evidence is not susceptible to only one interpretation.

Accordingly, extrinsic evidence of the true meaning of the contract should go to the factfinder, here the jury, in order to determine who owns the CSC equipment.   Because TransCore has a plausible claim, the Court **DENIES** PRHTA's motion for judgment on the pleadings, (Docket No. 66).

   **IT IS SO ORDERED**.

San Juan, Puerto Rico, March 20, 2017.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              UNITED STATES DISTRICT JUDGE